[L. A. No. 1037.  In Bank.—November 28, 1903.]

## C. E. SWIFT et al., Appellants, v. OCCIDENTAL MINING AND PETROLEUM COMPANY, and J. J. HIGH, Respondents.

141   161
e142  467
141   161
144    82
144   563
141   161
148   438

Order Denying New Trial—Review upon Appeal.—Upon appeal from an order denying a new trial, this court is limited in its review to the grounds upon which the new trial was asked, and cannot review the sufficiency of the pleadings or findings to support the judgment, or consider any errors in the conclusions of law or in the judgment.

Id.—Decision against Law—Ground for New Trial.—A motion for new trial on the ground that the "decision is against law," is only permissible when a new trial is the appropriate means of correcting the error in the decision, as where omitted findings upon material issues are essential to be made.  It cannot be made to correct any conclusion of law from the findings, or any decision against law, for the correction of which a new trial would be vain or useless.

Id.—Specifications of Insufficiency of Evidence—Object of Rule. —Specifications of the insufficiency of the evidence to sustain the findings, which clearly designate the findings and parts of findings, which it is claimed the evidence does not justify, are not objectionable.  The object of the rule requiring these specifications is to shorten the statement by excluding everything irrelevant to the specified fact, and to notify the opposing party of the particular finding called in question, that he may see that the statement fairly and fully presents the evidence bearing on that particular matter; and this object accomplished, the statute is satisfied.

Id.—Ejectment—Cross-Complaint—Oil Lease—Right of Renewal— Breach of Conditions—Findings against Evidence.—In an action of ejectment, where the defendant set up by way of cross-complaint a right of renewal of a lease of oil-land from the plaintiff, which made a renewal of the lease depend upon the performance of conditions, which the court found, generally and specifically, had been complied with, whereas the evidence clearly showed a breach of the conditions, an order denying a new trial must be reversed for insufficiency of the evidence to sustain the findings.

Id.—Evidence—Use of Oil for Fuel—Custom—Practical Construction of Lease.—Where the terms of the lease were not clear as to the right of the lessee to use oil for fuel, though evidence of a custom to that effect among oil prospectors was not admissible, evidence was admissible to show that the plaintiffs acquiesced in the burning of oil in the work of development, and made no demand on account of the oil so used; and such evidence sufficiently establishes a practical construction of the lease by the parties, and sustains a finding according to such evidence.

CXLI. Cal.—11

Id.—Clause as to Rights of Miners—Misuse of Word.—A clause in the lease conferring upon the lessees "such other rights and privileges as are vested in mines under the laws of the United States and of the state of California," cannot be treated as meaningless because of the use of the word "mines," instead of "miners," and is intended to confer upon the lessees the rights conferred upon prospectors of mining-ground by the laws of this state and of the United States.

Id.—Forfeiture of Lease—Waiver—Rights of Lessor—Breach of Conditions of Renewal.—The waiver of a forfeiture of the lease for breach of conditions, by not insisting thereupon, could not affect the right of the lessor to defeat a renewal of the lease for breach of conditions upon the faithful performance of which the right of renewal depended.

Id.—Development—Amount of Expenditure—Cessation of Work.—The amount expended in the development of oil under the lease was properly proved; but the amount expended in the beginning of the operations could not excuse a subsequent cessation of work, in breach of a condition of renewal of the lease.

Id.—Evidence—Expectation of Stockholders and Directors.—Evidence was not admissible to prove that the stockholders and directors of the defendant corporation expected and counted upon a renewal of the lease. Without a performance of the conditions of the lease, their expectations were of no avail, and with it unnecessary.

Id.—Understanding of Parties—Meaning of Contract.—The court properly excluded evidence to show the understanding of the parties touching the meaning of the contract at the time it was executed.

APPEAL from an order of the Superior Court of Santa Barbara County denying a new trial. H. T. Williams, Judge presiding.

The facts are stated in the opinion of the court.

B. F. Thomas, for Appellants.

The evidence of custom was not admissible, there being no showing that the parties contracted in relation thereto. (Lawson on Usages and Customs, sec. 38; *Pittsburg etc. R. R.* v. *Nash,* 43 Ind. 423; *Chicago etc. R. R. Co.* v. *Dickson,* 143 Ill. 368.) A waiver of a right of forfeiture of the lease does not include a waiver of condition precedent to a renewal of the lease. (Taylor on Landlord and Tenant, 6th ed., secs.

47, 339; *Duffield* v. *Michaels,* 97 Fed. Rep. 825.) The evidence does not sustain a right to a specific performance of the contract for renewal. (Waterman on Specific Performance, sec. 452; Wood on Landlord and Tenant, sec. 416; Pomeroy on Contracts, secs. 334, 357; *Jones* v. *Durrer,* 96 Cal. 99; *McGlynn* v. *Moore,* 25 Cal. 384; *Baird* v. *Milford Land etc. Co.,* 89 Cal. 552; 3 Pomeroy's Equity Jurisprudence, 1st ed., sec. 1407.) Erroneous conclusions from the findings constitute a decision against law. (*Bosquett* v. *Crane,* 51 Cal. 505.) The insufficiency of the cross-complaint to sustain the decision is a decision against law, which may be considered on appeal from an order denying a new trial. (*Simmons* v. *Hamilton,* 56 Cal. 495.) The specifications of insufficiency of the evidence to sustain the findings were proper in form. (*Kyle* v. *Craig,* 125 Cal. 107; *De Molera* v. *Martin,* 120 Cal. 544; *Newell* v. *Desmond,* 63 Cal. 242; *Harnett* v. *Central Pacific R. R. Co.,* 78 Cal. 32; *Smith* v. *Ellis,* 103 Cal. 294; *Livestock G. P. Co.* v. *Union Stockyard Co.,* 114 Cal. 447.)

E. W. Squier, and John J. Squier, for Respondents.

The court cannot upon this appeal from an order denying a new trial consider the sufficiency of the pleadings or of the findings to support the judgment. (*Brison* v. *Brison,* 90 Cal. 323; *Tompkins* v. *Montgomery,* 123 Cal. 219; *Wheeler* v. *Bolton,* 92 Cal. 159, 167; *Hall* v. *Susskind,* 120 Cal. 559, 565; *In re Doyle,* 73 Cal. 564; *Byxbee* v. *Dewey,* 128 Cal. 322; *Rauer* v. *Fay,* 128 Cal. 523; *Schroeder* v. *Pissis,* 128 Cal. 209; *Riverside Water Co.* v. *Gage,* 108 Cal. 240; *Kirman* v. *Hunnewill,* 93 Cal. 526; *Bode* v. *Lee,* 102 Cal. 583.) Equity will decree specific performance of a covenant to renew a lease without regard to the materiality of the remedy. (Pomeroy on Specific Performance, 2d ed., sec. 9; Fry on Specific Performance, sec. 948; *McCarger* v. *Rood,* 47 Cal. 138.) The specifications of insufficiency of the evidence to justify the findings are not sufficient. (Code Civ. Proc., sec. 659; *Kyle* v. *Craig,* 125 Cal. 107, 116; *De Molera* v. *Martin,* 120 Cal. 544; *Spotts* v. *Hanley,* 85 Cal. 155; *Taylor* v. *Bell,* 128 Cal. 306.) The defendants have waived any breach of the conditions of the lease, and should not be heard to insist upon this in resistance to a specific performance of the covenant of renewal.

(Waterman on Specific Performance, 1st ed., sec. 455; Mc-Glynn v. Moore, 25 Cal. 394; Steele v. Branch, 40 Cal. 3, 13; Jones v. Durrer, 96 Cal. 96; Witmer Bros. v. Weid, 108 Cal. 569; Ireland v. Nichols, 46 N. Y. 415; Cowper v. Duryea, 90 N. Y. 599; Smith v. Rector St. Philip's Church, 107 N. Y. 610; Webster v. Nichols, 104 Ill. 172; Jolly v. Single, 16 Wis. 284; Garnhart v. Finney, 40 Mo. 449;[1] Hukill v. Myers, 36 W. Va. 639.) Proof that defendant was relying on a renewal of the lease was proper. (Maynard v. Fireman's Fund Ins. Co., 34 Cal. 48;[2] Goodspeed v. East Haddam Bank, 22 Com. 530.[3]) Evidence of custom in regard to the use of oil for fuel was proper. (Coleman v. Clements, 23 Cal. 245; Webb v. Day, 111 Cal. 571; Morton v. Solambo Min. Co., 26 Cal. 528.)

BEATTY, C. J.—The appeal in this case is from an order overruling a motion for a new trial. After affirmance of the order in Department, a rehearing was granted, because of the error there committed in holding that the specifications in the statement were insufficient to entitle the appellants to a review of the findings of fact for the purpose of determining whether they were sustained by the evidence.

The first part of the Department opinion, however, containing a statement of the case and disposing of certain contentions of the appellants, to the effect that the cross-complaint of defendant was insufficient to sustain the judgment, and the findings insufficient to sustain the conclusions of the superior court, is approved and readopted as the opinion of the court in Bank, as follows:—

"The complaint alleges the ordinary action in ejectment to recover possession of eighty acres of land leased by plaintiffs to the assignors of defendant Occidental Mining and Petroleum Company for mining purposes. Defendant High was an employee of defendant company, and has no interest in the subject-matter of the action. In the opinion the word 'defendant' will have reference to the company. Defendant filed an answer, and also a cross-complaint, both of which were amended by leave of court.

[1] 93 Am. Dec. 303.                    [3] 58 Am. Dec. 439.
[2] 91 Am. Dec. 672, and note pp. 680, 681.

"The amended cross-complaint of defendant alleges: The execution of a lease of the land by plaintiffs, setting forth the document *in hæc verba;* the assignment to defendant; performance by defendant and its predecessors; offer to execute a renewal and tender by defendant to plaintiffs. In a second count allegations much the same as in second defense in the answer are set forth, praying that the renewal provided for in the lease be decreed to be specifically performed; or, in other words, that plaintiffs be required to execute a new lease. Plaintiffs, answering the cross-complaint, denied the allegations as to performance and alleged discontinuance of the work for periods specified; alleged, also, the wrongful cutting of timber and the burning of oil for fuel; failure to pay royalties as required by the lease. The pleadings are verified. The court made findings substantially in accordance with the allegations in the amended answer and amended cross-complaint, and entered its decree enforcing specific performance of the covenant for a renewal of the lease as prayed for in the cross-complaint.

"Plaintiffs moved for a new trial upon a statement of the case, which being denied, they appeal from the order. There is no appeal from the judgment. There was no demurrer to the cross-complaint or answer.

"It is urged by appellants that the findings are insufficient to support the judgment, and that the cross-complaint does not state a cause of action, and that the conclusions of law are unsupported by the findings.

"The insufficiency of the complaint cannot be considered on an appeal from an order denying a motion for a new trial, nor on such motion can the question whether the findings sustain the judgment be considered. (*Martin* v. *Matfield,* 49 Cal. 42; *Brison* v. *Brison,* 90 Cal. 323; *Bode* v. *Lee,* 102 Cal. 583; *Rauer* v. *Fay,* 128 Cal. 523, and numerous other cases.) Where the conclusions of law are claimed to be erroneous and not consistent with, or not supported by the findings, the moving party may proceed under sections 663 and 663½, Code of Civil Procedure (*Shaffer* v. *Lacy,* 121 Cal. 574); and where this course is not pursued there must be an appeal from the judgment, or the sufficiency of the findings to support the judgment cannot be considered. (*Patch* v.

*Miller,* 125 Cal. 240.) . . . This court is limited in its review of the action of the lower court, on appeal from the order denying a new trial, to the grounds upon which the new trial was asked. (*Wheeler* v. *Bolton,* 92 Cal. 159.) Appellants cite *Simmons* v. *Hamilton,* 56 Cal. 493, and claim that it was there held that the conclusions of law found by the court and the sufficiency of the pleadings could be considered on motion for a new trial. This case has been referred to on the point but once, so far as I can find (*In re Doyle,* 73 Cal. 564), and it was there said that 'a party cannot demand a new trial upon the ground that the court erroneously applied the law to the facts, or drew wrong conclusions of law from the facts found. The remedy in such case is by appeal. . . . Nothing to the contrary was decided by a majority of this court in *Simmons* v. *Hamilton,* 56 Cal. 493.' If there is anything in the Simmons case contrary to the rules above stated, it must be deeemed to have been long since overruled. We must, therefore, confine our inquiry to alleged errors of law properly specified in the statement and determine whether the evidence is insufficient to justify the findings in so far as it is so specified.''

In addition to the foregoing extract from the Department opinion, it may perhaps be useful to point out a distinction which has not heretofore been stated in direct terms, but is clearly deducible from our former decisions upon the question of moving for a new trial on the ground that the verdict or other decision "is against law."

Decisions against law are of two kinds. As to one kind, a new trial is always an effective, and often the only, means of correcting the error. As to the other kind, a new trial would be a vain and useless proceeding. In the first class of cases the motion is properly made, and error in overruling it is reviewable on appeal from the order. In the second class of cases, since a new trial would afford no relief, and since other and effective means of relief are expressly provided in the Code of Civil Procedure (secs. 663 and 663½), the motion for a new trial is necessarily overruled by the trial court and the order affirmed here. An example of the first class is where the trial court has failed to make any finding upon some material issue. The omitted fact being essential to the judg-

ment, a new trial for the purpose of determining the issue is the appropriate remedy, and the refusal to grant it is reviewable on appeal from the order. (See *Knight* v. *Roche,* 56 Cal. 17; *Spotts* v. *Hanley,* 85 Cal. 168; *Haight* v. *Tryon,* 112 Cal. 6.) An example of the second class is where the findings are full and complete as to all the issues, and fully' sustained by the evidence, but the conclusions of law are erroneous or misapplied in framing the judgment. In such a case it is plain that a new trial—a re-examination in the same court of the issues of fact, or some of them, (Code Civ. Proc., sec. 656)—would accomplish nothing, whereas a motion in pursuance of section 663 to vacate or correct the judgment would secure the appropriate relief in the trial court, or, if relief was denied there, it could be secured by an appeal from the judgment.

If we have succeeded in making this distinction clear, it amounts to this: That a motion for a new trial on the ground that the decision is against law, is or is not permissible according as a new trial is or is not the means of correcting the error in the decision, and it is not a means of such correction when the only fault in the findings is that they do not support the legal conclusions drawn from them, and still less is it a means of remedying a fault in the pleadings or an error in granting relief unwarranted by the pleadings. So far, therefore, as the motion for a new trial was based upon any supposed defects in the cross-complaint, or errors in the conclusions of law or in the judgment, it was properly denied.

But the motion was also based upon numerous exceptions to rulings of the superior court at the trial, and upon the further ground that the findings were in several particulars contrary to the evidence. There is no claim that the alleged errors in the rulings of the trial court are not properly specified, but respondent does contend that the specifications of findings unsupported by the evidence were insufficient to warrant the trial court in considering that ground of the motion, and, consequently, that this court cannot now consider it.

We think, however, that most of these specifications, if not all of them, are in every respect sufficient. They clearly designate the findings and parts of findings which it is claimed the evidence does not justify, and that is all that is re-

quired. The first case cited by respondent in support of his objection is *Kyle* v. *Craig*, 125 Cal. 116. The passage cited is not very clear in its statement of the supposed defects in the specifications there considered, and may be understood as countenancing the notion that the statute requires a specification of evidence in connection with the specification of the particular finding. But if so understood, it conveys an erroneous impression. No reference to the evidence is required in the specification except to say that it is insufficient to justify the particular finding called in question. The reasons for this construction of the statute are very clearly pointed out in the next case cited by respondent,—*De Molera* v. *Martin*, 120 Cal. 544,—as they had been pointed out frequently before. (See *Eddelbuttel* v. *Durrell*, 55 Cal. 279; *Dawson* v. *Schloss*, 93 Cal. 200.)

The substance of all these decisions is, that the object of the rule requiring these specifications is first to shorten the statement of the evidence by excluding everything irrelevant to the specified fact; and, second, to notify the opposing party of the particular finding called in question, in order that he may see that the statement fairly and fully presents the evidence bearing upon that particular matter. This object accomplished, the statute is satisfied, and the more recent decisions of the court have shown a disposition to construe specifications liberally in favor, rather than strictly against, the right of the moving party to be heard. This view is well and strongly stated by Justice Temple in *American Type etc. Co.* v. *Packer,* 130 Cal. 461, and has since been reaffirmed in several cases recently decided. (See *Stuart* v. *Lord*, 138 Cal. 672; *Drathman* v. *Cohen*, 139 Cal. 310; *Holmes* v. *Hoppe*, 140 Cal. 212; see, also, *Owen* v. *Pomona Co.*, 131 Cal. 539; and *Standard etc. Co.* v. *Habishaw*, 132 Cal. 124.)

In view of the rule as laid down and applied in these cases, and, indeed, in view of the stricter rule of *De Molera* v. *Martin*, 120 Cal. 544, the principal specifications in this statement must be held sufficient, and so holding we proceed to consider them.

The lease set out in the cross-complaint was of eighty acres of land known to contain petroleum, and its purpose was to develop the productive capacity of the ground. The

lessees were granted the exclusive right for a term of ten years, from the sixth day of April, 1889, to make excavations, dig wells, etc., upon the premises, and to extract and sell coal, coal-gas, petroleum, asphaltum, clay, and mineral substances of every character contained upon or within said lands, and to erect necessary buildings and machinery, to construct roads, and use and convey water. Of the proceeds of sales of such mineral products they were to retain nine tenths and pay the remaining one tenth to the lessors.

These provisions of the lease were subject to the following covenants and conditions:—

"1st. Said party of the second part shall, within three months from the date hereof, commence work to prospect for and to extract from said lands either or all of said substances above mentioned, and shall continue to prosecute work for such purposes during said period of ten years in developing and rendering such property productive, and any discontinuance of work for a period of four months shall, at the option of said parties of the first part, upon written notice, work a forfeiture of any and all privileges herein and hereby granted, and in case the net proceeds derived from said property shall in any one year amount to less than six hundred dollars, then and in that case all the privileges herein and hereby granted shall be forfeited, unless the parties of the second part shall be actually employed in the prosecution of said work.

"2d. Said grantees shall, on demand, pay monthly to said grantors, during said period of ten (10) years, one tenth (1-10) of their gross earnings derived from sale of the products or substances aforesaid, found or mined on said above-described lands; and said grantors at all times to have access and full and unrestricted permission to inspect, examine, and take copies of all books, accounts, and memoranda in the possession of said grantees, belonging or appertaining to said business."

It was finally provided that a faithful compliance with these covenants should entitle the grantees, or their assigns, to a renewal for a like term.

The issues tried by the superior court were those made by the answer to the cross-complaint denying its allegation of

compliance with the conditions upon which the stipulation to renew was made to depend, and the findings were generally that all the covenants on the part of the lessees had been fully performed, and specifically that each of the conditions had been performed, except where, in some particulars, performance had been waived.

These are the findings attacked by the specifications. The evidence in the transcript is voluminous, and shows that the defendant, within the time stipulated, entered upon the demised premises and commenced and carried on the work of exploration and development energetically, and at large outlay for four or five years, but that it did not succeed in materially increasing the amount of oil flowing from a small excavation or tunnel which had been opened before it took possession. During this time it drove a tunnel a distance of some four hundred feet and sank seven wells within a space of five acres.

The tunnel has continued to yield a small quantity of oil, and, by pumping, some oil was obtained from two or three of the wells, but they seem finally to have been, to a great extent, abandoned. This, in general terms, was the condition of affairs on the 31st of March, 1899, when plaintiffs notified the defendant that they would not renew the lease. The impression left upon the mind from a consideration of all the evidence in the record, and especially of the admissions and qualifications elicited by cross-examination of defendant's witnesses, is, that the work of exploration and development during the last half of the ten-year term was not at any time vigorously pushed, but with respect to two periods, —viz., from July, 1894, to December, 1895, and from April, 1898, to February, 1899,—it clearly appears by the uncontradicted evidence that no work of development whatever was done. The evidence offered by defendant is to this effect, and part of it—with reference to the first period—was derived from the defendant's books of account, which showed that between August 1, 1894, and November 21, 1895, the only persons receiving compensation from the defendant were George Streeter and its secretary. The salary of the secretary, of course, cannot count in the matter of development, and Streeter, whose wages were $1.25 per diem, was

employed exclusively in pumping oil and at odd times in working on roads and trails. He testifies to a complete cessation of development work from July or August, 1894, to November, 1895. There is nothing to contradict this evidence. We have carefully examined those portions of the record cited by respondent as supporting the finding of the court and cannot discover anything to sustain their contention. The testimony of Mr. Frink merely identifies certain vouchers in the shape of receipts for wages. All of these payments were made prior to July, 1894, except one, and several of them in 1893. And the single one made subsequent to July, 1894, was for labor performed prior to December 1, 1893. The testimony of Mr. Johnson shows nothing different, and the same may be said of the testimony of Snow. The testimony of Judge Day is in relation to work of comparatively trifling amount done on roads and trails by Streeter and others, and does not show when it was performed. Altogether, the proof is clear that no work of development was done between July, 1894, and December, 1895, unless the pumping of oil, and a little work on the roads by one man—when not engaged in pumping,—answers that description, which it clearly does not. The evidence on the part of defendant with reference to the period between April, 1898, and February, 1899, is equally unsatisfactory.

The testimony of Frink is again in relation to vouchers for wages paid for work done prior to May, 1898, except in the case of Snow, who had taken the place of Streeter as caretaker, and did no work of development. Snow's testimony shows that he was merely in charge of the works, keeping things in order and removing obstructions to the flow of oil from the tunnel, and that work was recommenced on the tunnel in February, 1899. Mr. Eddy's testimony is to the effect that a written contract to extend the tunnel was signed by certain parties in August, 1895, but it is not shown that any work was ever done under the contract. On the contrary, there is evidence that the parties executing this or a similar contract, after visiting the tunnel, abandoned it, and the difficulty of procuring men willing to do the work is the excuse of defendant for its failure to prosecute it more vigorously.

It is unnecessary to discuss other exceptions to the findings, for if the two above considered are material—a point as to which we have no doubt—their want of support in the evidence compels a reversal of the order denying a new trial, and as to other disputed facts they may be properly left to the consideration of the trial court, unaffected by any expression of opinion on our part.

Some questions of law discussed in the briefs and likely to become the subject of controversy upon a retrial of the issues of fact require to be noticed in connection with the foregoing discussion. It was proven by plaintiffs, and in effect found by the court, that the defendant cut some brushwood and timber, growing on the land, and used it for fuel to generate steam in the work of development; also, that the oil produced on the premises was used for the same purpose and not accounted for. These things were done by defendant under a claim that a clause in the lease conferred the right to use the firewood and a local custom justified the use of the oil and the omission to account for it. As to the latter, we do not think there was any competent evidence of a custom that could modify the terms of the lease; but the terms of the lease are far from clear on this point, and the court finds upon evidence which we deem satisfactory that the plaintiffs knew and acquiesced in the practice of using the oil for fuel in carrying on the work of development, and that they never made any demand on account of the oil so used. This was a practical construction of the contract by the parties themselves or a waiver by plaintiffs of a doubtful right, and by itself certainly ought not to defeat the right of the defendant to a renewal. The cutting of brushwood and timber for fuel, if it amounted to substantial waste, and was done without the knowledge and consent of the plaintiffs, would present a different question. The finding is, that there was no substantial injury done to the freehold by such cutting as was done, and that the plaintiffs knew and consented to it. The evidence on this point, however, is in some conflict, and if on a new trial the facts should be found differently, a question would arise upon the construction of a clause in the contract which confers upon the lessees, among other privileges, the following: "such other rights and privileges as are vested

in mines under the laws of the United States and of the state of California.'' We do not think this clause can be treated as meaningless merely because the word ''mines'' is used where perhaps the word ''miners'' would have better expressed the intention of the parties. We have no doubt it was intended to confer upon the lessees the rights—whatever they are—that are conferred upon prospectors of mining-ground by the laws of this state and of the United States.

We are not sure that the respondent means to contend that the failure of appellants to insist upon a forfeiture of the lease for waste or breach of covenant, precludes them from refusing to grant another term, though there are passages in his brief which seem to assert that proposition. If the contention is made it cannot be sustained. The waiver of the forfeiture is one thing; the renewal of the lease is quite another. The neglect of the landlord to strictly enforce his right of forfeiture for breach of condition does not entitle the tenant to a renewal when such renewal is dependent upon faithful performance of conditions. There is no finding, and no evidence to warrant a finding, that plaintiffs consented to any cessation of the work of exploration and development, and their mere failure to enforce a forfeiture for the cessations which occurred in 1894-1895 and 1898-1899 was not a waiver of performance of the conditions upon which they had bound themselves to renew the lease. (Pomeroy on Contracts, secs. 355-359, and notes; *Gannett* v. *Albree,* 103 Mass. 372; *Duffield* v. *Michaels,* 97 Fed. Rep. 825. And see further upon the propositions here considered, Woods on Landlord and Tenant, sec. 413; Waterman on Specific Performance, sec. 452; Pomeroy's Equity Jurisprudence, sec. 1407.)

We cannot undertake to discuss in detail the numerous exceptions to the rulings of the court at the trial. It was not error to admit evidence as to the amount of money expended by defendant in pursuance of its agreement to explore and develop, but the amount expended in the beginning of operations could not excuse a subsequent cessation of work.

It was error to allow the stockholders and directors of the company to testify that they expected and counted upon a renewal of the lease. The only way they could entitle them-

selves to a renewal was by performing the conditions of their lease. Without this their expectations were of no avail, and with it unnecessary. And if in any view this testimony had been admissible, the plaintiffs should have been allowed greater liberty of cross-examination.

The court did not err in excluding evidence as to the understanding of the parties touching the meaning of the contract at the time it was executed. The evidence of a custom allowing the prospector to burn the oil produced on the claim was incompetent, but it was competent to show that the plaintiffs acquiesced in the claim of defendant to the exercise of that right under the terms of the lease.

The order denying a new trial is reversed, and the cause remanded.

McFarland, J., Shaw, J., Angellotti, J., and Lorigan, J., concurred.

Rehearing denied.